UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DARNELL GRAY,

        Defendant.

_____/

Case No: 24-20145

F. Kay Behm

U.S. District Judge

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT (ECF No. 18)**

**I.    PROCEDURAL HISTORY**

This matter is before the court on Defendant Darnell Gray's Motion to Dismiss Indictment. (ECF No. 18). On March 20, 2025, Gray was indicted on one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) and § 924(e), commonly referred to as a "felon in possession" law. (ECF No. 1). The indictment alleges that Gray has at least three previous convictions for a violent felony or a serious drug offense. *Id.* Gray filed his motion to dismiss the indictment on November 8, 2024. (ECF No. 18). Central to Gray's motion is whether § 922(g)(1) is constitutional under the U.S. Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022) and the Sixth Circuit's decision in which it considered that question and determined that

1

§ 922(g)(1) "is constitutional on its face and as applied to dangerous people." *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024). The court held a hearing on the motion on January 28, 2024, and this opinion follows.

For the reasons described below, the court finds that Gray may lawfully be prohibited from possessing firearms and **DENIES** Defendant's Motion to Dismiss Indictment.

II. **FACTUAL BACKGROUND**

Gray is before the court on a charge of felon in possession and challenges the constitutionality of that charge as applied to him. Due to his prior felony convictions, Gray's alleged possession of a handgun violates 18 U.S.C. § 922(g)(1). Under the Sixth Circuit's decision in *Williams,* Gray's prior convictions are relevant to his as-applied challenge to § 922(g)(1). Gray's record reflects multiple felony convictions. At the hearing, Gray, via his counsel, conceded the accuracy of his criminal history as recounted by the government. Gray's first adult conviction occurred after he was charged with felonious assault after beating a deaf boy with a mop handle, on September 24, 1995, when he was 18 years old. He subsequently pleaded guilty to the charge and was sentenced to thirty-two to forty-eight months in prison. On November 26, 1995, Gray was the driver and lookout for a group of young men who broke into the home of a 70-year-old

2

recent widow and stole money, firearms, appliances, and vandalized her home. Gray subsequently was convicted of attempted home invasion – 1st degree and was sentenced to three to five years in prison.  In 2001, when he was approximately 24 years old, not long after being released from prison, Gray was arrested with a firearm and charged with carrying a concealed weapon.  He subsequently pleaded guilty to being a felon in possession of a firearm and was sentenced to a term of prison for two to five years.  In 2009, when he was well into his thirties, Gray was charged with armed robbery, carrying a concealed weapon, possession of a firearm by a felon, and felony firearm.  It was alleged that Gray returned to apartment of his girlfriend, and the mother of his child, and robbed her of her rent money after being kicked out of her home for talking with another woman on his cell phone.  Gray subsequently pleaded guilty to felonious assault, carrying a concealed weapon, possession of a firearm by a felon, and felony firearm.  He was sentenced to two to seven years in prison as a result.[1] Finally, in 2017, Gray was convicted of a felony for the delivery/manufacturing of

---

[1] In his motion to dismiss the indictment, Gray attached an affidavit from the victim in the case in which she attempted to recant the allegations of being robbed by Gray in 2009.  (ECF No. 18-2).  The affidavit does not change the legitimacy of Gray's conviction, and Gray offers no authority suggesting that the court may disregard the conviction and its impact under *Williams*.

less than 50 grams of narcotics for which he was sentenced to six months in jail and twenty-four months of probation.

### III. STANDARD OF REVIEW

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment codified a pre-existing "individual right." 554 U.S. 570, 579-81, 592 (2008). This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common usage, like those used for self-defense. *Id.* at 625, 627 (quotation omitted). *Heller* cautioned that nothing in its opinion "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," like § 922(g)(1). *Id.* at 626. Thus even after *Heller*, many courts of appeals, including the Sixth Circuit, refused to hear as-applied challenges to § 922(g)(1). *United States v. Carey*, 602 F.3d 738, 741 (6th Cir. 2010). The U.S. Supreme Court upended that tradition in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022). *Bruen* required the government to show that a regulation's infringement on a particular citizen's Second Amendment right was "consistent with this Nation's historical tradition of firearm regulation." *Id.* at 17. The scope of that inquiry remained unclear. *See United States v. Rahimi*, 144 S. Ct. 1889, 1927 n.1 (2024) (Jackson, J., concurring) (collecting cases). The Supreme Court then attempted to clarify *Bruen*'s holding

4

in *United States v. Rahimi*, 144 S. Ct. 1889 (2024). *Rahimi* emphasized that firearm regulations need not have a historical "twin" to be valid. *Id.* at 1898 (quoting *Bruen*, 597 U.S. at 30). Instead, the relevant inquiry is whether the challenged regulation is consistent with the "principles that underpin our regulatory tradition." *Id*. In light of *Bruen* and *Rahimi*, the Sixth Circuit considered whether § 922(g)(1), a federal "felon in possession" law, remained a constitutional mechanism for disarming people in *United States v. Williams*. *See* 113 F.4th 637 (6th Cir. 2024). *Williams* is a published decision in which the court concluded that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to "dangerous" people. *Id.* at 663. It also set forth the standard for determining whether a person convicted of a felony is "dangerous" and can be disarmed. "When evaluating a defendant's dangerousness, a court may consider a defendant's entire criminal record," "as well as other judicially noticeable information." *Id.* at 660.

Under the *Williams* framework, criminal convictions can broadly be separated into three categories. The first category encompasses crimes against a person such as murder, rape, assault, and robbery, which speak "directly to whether an individual is dangerous." *Id.* at 658. In this category, the burden of proof to show non-dangerousness is "extremely heavy." *Id.* ("[V]iolent crimes are

5

at least strong evidence that an individual is dangerous, if not totally dispositive on the question."). The second category encompasses crimes like drug trafficking or burglary. "[T]hese crimes put someone's safety at risk, and thus, justify a finding of danger." *Id.* at 659. The final category includes crimes like mail fraud or making false statements. Often, such crimes cause no physical harm to another person or the community, and the *Williams* panel indicated that a defendant's burden is low because district courts should generally find that these crimes "don't make a person dangerous." *Id.*[2] Notably, prior convictions can be accepted "without an evidentiary hearing or jury fact finding" and that a presentence report whose contents have not been objected to can also be so considered. *Id*. at 662 (citing *Almendarez-Torres v. United States*, 523 U.S. 224, 228–39 (1998)).

IV. **ANALYSIS**

Gray first argues that his felony record includes a number of convictions from over 14 years ago, mostly when he was very young, and only two recent

---

[2] A note on phrasing: this court attempts to use, where possible, language that centers the dangerousness of the crime and acts at issue. Convictions based on crimes which put another person's safety at risk are valid bases for disarming someone under § 922(g)(1). *Williams*, at *40-41. As the Supreme Court put it: "Our tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." *United States v. Rahimi*, 144 S. Ct. 1889, 1902 (2024); *see also United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (holding that the offense of drug trafficking itself poses a danger to the community).

felonies: Possession with Intent to Deliver Less than 50 Grams, and Use of a Controlled Substance.  With regard to the more recent robbery conviction, Gray points out that the testimony has been recanted.  Gray also points to his youthful offender status at the time of some of his prior convictions, asserting that children are less culpable than adults.  *See Miller v. Alabama*, 567 U.S. 460 (2012); *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016).  The government points to Gray's multiple felonies committed over the course of 22 years in support of dangerousness.

      Under the *Williams* framework, a court should ask: has the defendant been convicted of any felonies for dangerous conduct?  If so, Congress can constitutionally disarm him.  Although the *Williams* court at times put the analysis in terms of "dangerous persons" and whether a person "is dangerous," the analytical framework only asks about the dangerousness of their conduct which resulted in a felony conviction.  *See Williams*, 113 F.4th at 662; *id.* at 660 (phrasing the inquiry as "whether a defendant's past convictions are dangerous"). While *Williams* noted "that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness," 113 F.4th at 658 n.12, the Sixth Circuit has declined to consider evidence that the present charge would lend to a showing of his dangerousness.  *See United States v.*

*Vaughn*, 2024 WL 4615853, at *2, n.2 (6th Cir. Oct. 30, 2024). Similar to *Williams*, in *Vaughn*, the defendant's prior "criminal convictions [were] sufficient to resolve this case." *Id*. The court again reached the same conclusion in *United States v. Morton*, 123 F.4th 492 (6th Cir. 2024), where, in assessing dangerousness, the court considered only the defendant's criminal convictions, not the conduct underlying the present indictment. Here, the court concludes that it need not consider the circumstances that bring Gray to federal court on the present charges and relies on his prior convictions to evaluate dangerousness.

With that in mind, several considerations justify denying Gray's motion. First, he has multiple felony convictions over the course of two decades, which, while not dispositive, weigh against a finding that Congress may not constitutionally disarm him. Second, he has two convictions for felonious assault, and a conviction for attempted home invasion. As held in *Williams*, "there is little debate that violent crimes are at least strong evidence that an individual is dangerous, if not totally dispositive on the question." *Id*. at 658. Thus, his two convictions for felony assault establish dangerousness. Moreover, his conviction for attempted home invasion is categorized as a crime against a person and also falls within the first *Williams* category. *See* Mich. Comp. Laws § 777.16d, f, m;

8

*United States v. Jones*, 2025 WL 48072, at *3 (E.D. Mich. Jan. 8, 2025) ("attempted first-degree home invasion … likely falls in the first *Williams* category").

Courts have found that another law that Gray was convicted of violating— unlawful possession of a firearm by a convicted felon— is "like drug trafficking and burglary in that [it] poses a danger to the community and can increase the odds of a violent confrontation with others." *United States v. Bethea*, 2024 WL 4645395, at *5 (S.D. Ind. Oct. 31, 2024) (citing *Huddleston v. United States*, 415 U.S. 814, 824 (1974) ("[T]he ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States.")). *Williams* itself suggests that a prior felony firearm conviction, *by itself*, is sufficient to support a finding of dangerousness. *Williams*, 113 F.4th at 662 (Williams was convicted of aggravated robbery, attempted murder, and felon in possession of a firearm; the court held that "[t]he government could've pointed to *any one* of those convictions to demonstrate his dangerousness.") (emphasis added). Accordingly, these convictions properly serve to further demonstrate Gray's dangerousness.

Finally, drug-trafficking convictions are specifically identified by the Sixth Circuit as those "that inherently pose[] a significant threat of danger[.]" *Williams*, 113 F.4th at 663. Gray makes no effort to argue that his particular drug-

9

trafficking offense does not meet the level of dangerousness identified in *Williams*. And as this court has observed in earlier decisions on this issue, it is difficult to discern what exactly might be a non-dangerous drug-trafficking conviction if drug trafficking is inherently a dangerous crime, as held by the Sixth Circuit. *See id.* at 659 ("[C]rimes [that] put someone's safety at risk . . . justify a finding of danger."). Under *Williams*, drug trafficking is a presumptively dangerous felony; it is the defendant's burden to overcome that presumption. *Williams* provides a defendant with "an opportunity to make an individualized showing that he himself is not actually dangerous." 113 F.4th at 663. By filing this motion to dismiss, Gray has invoked this "opportunity," but because he essentially offers no evidence or argument with respect to his specific underlying drug-trafficking conviction, he has not shown that "he himself is not actually dangerous." *See United States v. Barber*, 2024 WL 4443763, at *2 (N.D. Ohio Oct. 8, 2024). Again, the Sixth Circuit made it clear in *Williams* that drug trafficking generally poses a significant "danger to the community" and "often leads to violence." 113 F.4th at 659; *see also United States v. Jennings*, 2024 WL 4560602, at *5 (E.D. Mich. Oct. 24, 2024) (The court found that the defendant's prior illegal gun possession charges (and possibly the body armor charge) fall into the second category of offenses identified by the *Williams* court, those that are not violent

crimes against a person but "may nonetheless pose a significant threat of danger.") (quoting *Williams*, 113 F.4th at 659). Whatever scenario might qualify as a non-dangerous drug trafficking charge, the court does not find that Gray established it here.

As to Gray's youthful status at the time of his earlier convictions, he does not offer any cases suggesting that youthfulness is a factor that should be considered in allowing a crime to be constitutionally charged, as opposed to a factor in the punishment meted.³ Notably, none of the offenses the court considers above are crimes Gray committed as a juvenile offender. *United States v. Green*, No. 23-CR-20506, 2024 WL 4469090, at *4 (E.D. Mich. Oct. 10, 2024) ("The court is cognizant that an offense committed while still a minor is generally considered to have less probative value to determining the present characteristics of a person.") (citing Fed. R. Evid. 609 (limiting the admissibility of juvenile

---

³ When *sentencing* a juvenile offender, the court must consider the so-called "*Miller* factors." *Miller v. Alabama*, 567 U.S. 460, 471 (2012). These include: (1) chronological age and immaturity, impetuosity, and the failure to appreciate risks and consequences; (2) the offender's family and home environment; (3) circumstances of the offense, including the extent of participation in the criminal conduct and the effect of familial and peer pressures; (4) the effect of the offender's youth on the criminal-justice process, such as the offender's inability to comprehend a plea bargain; and (5) the possibility of rehabilitation. *Id.* at 477-478. These "distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Id.* at 472.

11

adjudications as probative of truthfulness); *Graham v. Florida*, 560 U.S. 48, 68 (2010) ("Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults.")). Even if the court were to less weight or consideration to those crimes Gray committed in his teens and 20s, he continued to commit felony offenses long after that in 2009 and 2017. Given Gray's extensive criminal history as both a youthful offender and well into adulthood, the court is not convinced that his youth is a factor that can overcome the finding of dangerousness made above.

**V.     CONCLUSION**

The court finds that Gray has not rebutted the heavy presumption that his record includes convictions for crimes which posed a danger to others and the community and that § 922(g)(1) may constitutionally be applied to him. Therefore, the court **DENIES** Defendant's Motion to Dismiss Indictment under § 922(g)(1).

**SO ORDERED**.

Date: January 28, 2025                             s/F. Kay Behm
                                                  F. Kay Behm
                                                  United States District Judge